LUTTIG, Circuit Judge,
dissenting.
I have no idea what the Treasury Department intended when it promulgated the regulation that is before us today. However, whatever its intent, I suspect the Department drafted the regulation against a background belief that state recordation laws do not generally distinguish among third-party creditors. But whether or not this was its belief, I am confident as to the most defensible reading of the language that the Department chose to effectuate whatever its intent was (and, incidentally or not, that reading is consistent with what I suspect was the Department’s background belief).
I am confident that when the regulation states that a judgment must be recorded if “third parties” must record, it is most plausibly read, absent any contextual evidence to the contrary (as here), to mean that judgment lien creditors in the state must record their judgments only if the state requires that a judgment be recorded before it is effective against all third-party creditors. Not just one third-party creditor. Not just some third-party creditors. And not just some unspecified, substantial class of third-party creditors. All third-party creditors. Indeed, this may well be the only even arguably plausible interpretation of the actual language of the regulation.
The want to interpret the regulation contrary to its language most naturally read is prompted, I believe, by nothing more than the discomfort of uncertainty that is felt when one is faced with state law, like that in West Virginia, that simply happens to be more nuanced than I suspect the Department realized existed at the time it promulgated the regulation. This is a want to which it is particularly inappropriate for a court to yield, however, because to do so results not in an interpre *308 tation, but in a rewriting, of the regulation’s language.
The alternative interpretations to the one I would place upon the regulation, including the one embraced by the majority, are informed by rank speculation as to the Department’s possible intent. And, to no surprise, these interpretations require constructions of the regulatory language that the language cannot even possibly bear.
The majority’s interpretation of the regulation is a perfect example. The majority asserts that the purpose of the IRS regulation must have been to ensure that the IRS was always the equal of the “most favored” third party creditor in a given state, an assertion for which the majority does not offer even a hint of evidence. Based upon nothing more than this pure speculation, and without any regard for the text of the regulation, the majority proceeds directly to hold that the regulation must mean that if a state requires that a judgment be recorded before it is effective against any one third-party creditor, then judgment lien creditors in the state must record their judgments before their liens are perfected — the interpretation that would best effectuate that assumed purpose. The majority cloaks this holding in formulation that is comforting to the casual reader (and no doubt to the majority as well) because it masks the difficult interpretive question. The majority states that recordation is required when state law requires any “class” of third parties to record. But its holding that such a “class” may consist of but a single individual could not be clearer: “[T]he regulation requires recording against a class of third parties acquiring liens, no matter how many third party lienors are part of the state-defined class.”
Whatever else the regulation means, it cannot possibly mean this. At a bare minimum, given that the regulation refers to “third parties ” in the plural, there must at least be two third parties who are required to record under state law in order for recordation of a judgment to be needed. Contrary to the majority’s holding, surely it cannot suffice if but one party is required under state law to record. But if “two” are needed, then why “two” instead of “ten.” If “ten,” then why “ten” instead of “a substantial number.” If “a substantial number,” then why “a substantial number” instead of “a majority.” And if “a majority,” then why not “the vast number.” There is simply no basis in law for choosing any one of these over the other. No basis in the text of the regulation. No basis in its structure or context. Not even a basis in what the majority assumes to have been the regulation’s purpose.
I am perfectly content to support the ordinary meaning interpretation that I would give the regulation by appeal to the analogy of the apple connoisseur (though I must confess to being baffled over the majority’s invocation of this analogy in support of its interpretation). If one says “I like apples,” and he is to be understood as having said either that “I like all apples” or that “I like one apple,” he is most naturally understood to have said that he likes all apples — at least if language is to have any meaning beyond what one of us chooses to say it means. Which is to say that, at least in ordinary language, when an “unmodified plural” is used and there is no other adjectival language of limitation or contextual evidence suggesting to the contrary, the qualifier “all” is implicit. In other words, under these circumstances, it is incumbent upon the speaker to qualify the phrase in the event he wants to communicate something less.
Indeed, the majority itself appears to accept this fact of ordinary understanding (though it may not realize it) when it pro *309 tests that one who claims to enjoy eating apples does not necessarily claim to enjoy eating all apples; if the majority did not itself believe that a claim to like apples is better understood as a claim to like all apples, then it almost certainly would not have felt the need to draw out this strictly logical, but ultimately irrelevant, fact. And it most certainly would not have drawn it out as to “all” but not as to “any.”
Of course it is true that to claim that one likes apples is not necessarily to claim enjoyment of all apples. But the question is not whether the apple eater has necessarily claimed to like all apples or claimed to like only one apple; the question, rather, is whether he is better understood to have claimed to like all apples or to have claimed like for merely one apple. The answer to this question is so obvious as not to require statement — as, again, it would appear even the majority would be obliged to concede.
No doubt recognizing that as between the conclusion that the apple connoisseur’s claim refers to all apples and the conclusion that it refers possibly only to one apple, the better is the former, the majority reformulates, and thereby misformu-lates, the question presented as one of whether the connoisseur’s claim is better understood as one to like all apples or only as one to like some unspecified class of apples. That is (returning to the regulation), the majority recasts the question as whether the regulation is better understood as requiring that all third parties record or only that some unspecified class of third parties record, in order for recor-dation of a judgment to be needed. The majority had seemed to flirt with this question at oral argument, though it had itself acknowledged that to answer such a question in the context of the instant regulation would invite resort to something like the “Platonic form” (rather than customary rules of judicial interpretation). See Transcript of Oral Argument (Sept. 19, 2005). Apparently underestimating the ultimate appeal of the “Platonic form,” I had not believed that at the end of the day the majority would actually find itself drawn to precisely this view of the presented question, and, in pursuit of the answer to this question, even to the “Platonic form” of interpretation that it acknowledged such a view of the question would invite.
Nonetheless, having decided to accept its own invitation to resort to the “Platonic form” (whatever that is in the context of judicial interpretation), the majority fares no better than under the more traditional modes of interpretation heretofore employed by the courts. For, with the question so framed, the ultimate vulnerability of the majority’s interpretation of the regulation is only more clearly exposed: There is absolutely no basis at all in the regulatory text for concluding that the Treasury Department intended to require recordation whenever state law required any unspecified class of third parties to record. At the risk of repetition, if “two” are needed, then why “two” instead of “ten.” If “ten,” then why “ten” instead of “a substantial number.” If “a substantial number,” then why “a substantial number” instead of “a majority.” If “a majority,” then why not “the vast number.” And, of course the hardest question for the majority, if any of these, then why not “all” — the one among the alternatives that is supported by the actual language of the regulation.
If the Department had intended such a rule as the majority settles upon, we simply would not have had before us the language that we do. If the Treasury-Department had intended to require recor-dation of a judgment if any class of third parties were obliged to record — even a class of one — not only is it obvious that it *310 would have written the regulation differently than it did, but it borders on the incredible to believe that it would have written the regulation as it did.
In sum, as would be expected of that which has as its object the ideal rather than the actual or the real, the “Platonic form” has yielded up for the majority an interpretation that produces what is sensed to be the ideal for which resort to “the Form” was made, but, alas, it is an interpretation that is able to claim no support whatsoever in that which is of the actual — that with which we as judges are to be concerned.
Because the majority appears to believe itself forced to its interpretation by what it perceives to be the unintended and unacceptable consequences of my interpretation, I should finally, perhaps, address myself to those consequences at least to say that I am not troubled at all about those that would appear to follow from the straightforward reading of the regulation, and even if I were, I would not yield to a troubled mind in this circumstance. To read the regulation as it is written does not, in any sense that I can discern, produce an absurd result. In fact, it would appear to produce a perfectly reasonable one. However, if perchance it is not the result intended or wished, the Department can simply amend the regulation forthwith. And far better that than the courts persist in all manner of linguistic contortion in effort to give judicial imprimatur to what it is only guessed to have been the intention of those who promulgated the regulation that is the source of our conjecture.
Were it the case that I disagreed with some parts of the majority’s opinion, but agreed with others, I believe it would be incumbent upon me to say more than simply that “I dissent.” However, given that I disagree not merely with some of the majority’s opinion but with the whole of that opinion, I do not believe that more is required of me to be said. I am, in other words, satisfied that none will misunderstand the statement “I dissent” to mean that while I dissent from some parts of my colleagues’ opinion, I concur in the remainder of the parts. Except perhaps those for whom the “Platonic form” is irresistible temptation.